**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Laborers' International Union
of North America, Local 534                     Case No.  1:11cv569

                 Plaintiff                     Judge Michael R. Barrett

    -vs-

Dr. David Hodge, *et al.*,

               Defendants

<u>**OPINION &ORDER**</u>

This matter is before the Court upon Plaintiff's Motion for Temporary and Preliminary Injunctive Relief (Doc. 2).  On August 23, 2011, this Court held a hearing on Plaintiff's Motion.  (Docs. 4, 6.)  Both parties filed post-hearing papers: Defendants' Memorandum in Opposition (Doc. 7) and Plaintiff's Post-Hearing Brief (Doc. 8).

## I.  <u>BACKGROUND</u>

Plaintiff Laborers' International Union of North America, Local 534 ("Local 534") represents construction craft laborers performing work in Butler County and Warren County, Ohio.  (Doc. 6, Hearing Transcript (8/23/2011) at 11.)  During the relevant time frame, Local 534 was involved in a labor dispute with a contractor who was performing work on the Marcum Center Addition/Renovation project located on Miami University's campus in Oxford, Ohio. (Id. at 12-13.)  Defendants are Dr. David Hodge, President of the University, and John McCandless, Chief of Miami University Police Department.

Local 534 planned to strike the contractor's job site at the Marcum Center to

1

coincide with the University's campus move-in days on August 18 and 19, 2011. (Id. at 13-14.) On the first day, Local 534 picketed and distributed handbills on the sidewalks parallel to Patterson Avenue without incident. (Id. at 23-24.) Local 534 also inflated a large rat balloon in the same area. (Id. at 69.) In the construction industry, the rat is a symbol of contractors who pay substandard wages and no fringe benefits. (Id. at 14.) Police officers from the University arrived and asked that the rat be deflated. (Id. at 69.) On the second day, Local 534 attempted to inflate the rat in another location along Patterson Avenue. (Id. at 29-31.) However, police officers from the University stopped Local 534 before the rat was unloaded from the truck. (Id. at 40.) The police officers threatened to destroy the rat balloon. (Id. at 18.)

The testimony at the hearing was that the rat itself is 10 to 12 feet wide and 20 to 25 feet tall. (Id. at 25, 27.) There was also testimony that the rat requires a portable generator and is attached with ropes to stakes, which are placed approximately ten feet away from the rat. (Id. at 25-26.)

While Local 534 was prohibited from displaying its rat balloon on August 18, 2011 and August 19, 2011, for purposes of its Motion, Local 534 only challenges Defendants' actions on August 19. (Doc. 8, at 3.) Local 534 argues that on that day, the location selected by Local 534 was within a sixty-six foot public right-of-way ("the August 19 location") and therefore its display is protected by the First Amendment. Local 534 requests that this Court enjoin Defendants from prohibiting Local 534 from displaying its rat balloon in the August 19 location; and from threatening to seize and destroy Local 534's property.

2

## II.  ANALYSIS

### A.  Standard of Review

In determining whether to issue a temporary restraining order, the Court should consider: "(1) whether the movant has a strong likelihood of success on the merits; whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) (quoting Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)).  "The foregoing factors are not prerequisites, but rather are factors which the Court should balance." *United States v. Edward Rose &* Sons, 384 F.3d 258 (6th Cir. 2004).  A temporary restraining order "is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F. 3d 566, 573 (6th Cir. 2002).

### 1.  Likelihood of success

Local 534 brings its First Amendment claim pursuant to 42 U.S.C. § 1983 and also brings a claim for declaratory judgment.  The Sixth Circuit has previously found that the use of a portable rat balloon is constitutionally protected expression.  *See Tucker v. City of Fairfield*, 398 F.3d 457, 463 (6th Cir. 2005).  As the parties have recognized, Local 534's claims hinge on whether the August 19 location was a traditional public forum or a limited public forum.

"The government is not required to grant access to all who wish to exercise their

3

right to free speech on every type of government property 'without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.'" *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir. 2004) (quoting Cornelius v. NAACP Legal Def. & Educ. Fund., Inc., 473 U.S. 788, 799-800 (1985)). "Rather, the existence of a right of access to government property and the extent to which such access may be limited by the government depend on the character of the property at issue." *Id.* (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44 (1983)). In this regard, the Supreme Court has adopted a forum analysis to determine when "the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius*, 473 U.S. at 800. The Supreme Court has recognized three types of public fora: (1) the traditional public forum, (2) the designated public forum and (3) the limited public forum. *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010) (citing Pleasant Grove v. Summum, 129 S.Ct. 1125, 1132 (2009)). The type of forum dictates which constitutional standard for restrictions on expressive activities will be applied. *Id.* (citing Summum, 129 S.Ct. at 1132).

Local 534 contends the August 19 location was in the public right-of-way and is therefore a traditional public forum. Defendants do not disagree with the general proposition that a public right-of-way is a traditional public forum.[1] However, Defendants

_____

[1]The Court notes that in *Tucker v. City of Fairfield*, the Sixth Circuit found that the district court did not abuse its discretion in finding that the public right-of-way was a public forum. 398 F.3d at 463. The Sixth Circuit explained that streets and sidewalks are generally considered traditional public fora. *Id. But see Satawa v. Bd. of County Road Com'rs of Macomb County*, 788 F.Supp.2d 579, 596-97 (E.D.Mich.,2011) (finding that median of roadway was not public forum even though a Michigan statute calls "the entire width between the boundary lines" of a

dispute that the right-of-way in this particular location is a public forum because the University claims ownership of all the property within the right-of-way identified by Local 534.

The testimony at the hearing brought little clarity on this issue. In an attempt to ascertain the location and boundaries of the public right-of-way, Local 534 members reviewed the records available at the Butler County Auditor's Office. (Doc. 6, at 33-35; Pls. Exs. 3-4.) One of Local 534's members, Raymond Hipsher, testified that Local 534 obtained Plaintiff's Exhibit 4 from the Butler County Recorder's Office. (Id. at 20, 35.) Hipsher testified that the black line in Plaintiff's Exhibit 4 represents the center of the street, and the red line represents the edge of the right-of-way. (Id. at 21, 35.) Hipsher explained that the red and black lines were added by the Auditor's Office. (Id. at 35.) Hipsher explained that on August 19, Local 534 intended to inflate the rat in the area of the yellow box marked on Exhibit 4. (Id. at 22.)

Defendants point out that Exhibit 4 bears the disclaimer: "For informational purposes only not intended for use as a survey." (Id. at 26.) Defendants presented testimony that the lines on Exhibit 4 only represent a right-of-way where the University places its utilities along the roadways. (Id. at 96, 100, 112.) Robin Parker, counsel for the University, testified regarding historical documents which show that the land where the University is situated was given to Miami University before the City of Oxford came into existence. (Id. at 102; Def. Exs. 21-25.) Parker testified that the University owns the road, sidewalks and right-of-way along Patterson Avenue. (Id. at 96, 98, 105.) Parker explained that within the

_____

right-of-way a "street.").

5

areas that the Local 534 claims are a public right-of-way, the University plants and trims the trees, cuts the grass, and installs computer and electric lines. (Id. at 106.) Parker explained that it does so without either receiving or needing permission from the City of Oxford. (Id.)

Parker also testified that the University's trespass policy permits visitors to walk through the campus, but restricts the giving of speeches, displays and other activities. (Id. at 96.)[2] Parker explained that picketing and handing out leaflets is permitted on certain "perimeter sidewalks," which the University has designated for speech. (Id. at 97-98.) However, Parker explained that the University has never designed "green areas" of campus as public fora. (Id. at 101.)

Defendant McCandless testified that the University Police has the authority to make arrests and issue tickets within the right-of-way lines marked on Plaintiff's Exhibit 4. (Id. at 71-72.) McCandless also testified that to his knowledge, the University has never permitted the grassy areas along Patterson Avenue to be a forum for anyone who wants

---

[2]Parker was referring to Section 16.4.c of the Miami University Policy and Information Manual (2011-2012) which provides:

> The buildings, grounds, and other property of Miami University campuses are dedicated to the educational mission of the University. Use of the buildings, grounds, and other property of the University is reserved for the direct and indirect support of the teaching, research, and service missions; of the University's administrative functions; and of students' campus-life activities. The University may prohibit or otherwise restrict access to or use of its buildings, grounds, and other property as may be necessary to provide for the orderly conduct of the University's teaching, research, and service missions; of the University's administrative functions; and of students' campus-life activities. Visitors are free to walk through our campuses; however, authorization is required from the University or from a recognized student organization to make speeches or presentations, to erect displays, to engage in any commercial activity, or to conduct similar activities on University-owned or University-controlled property.

to have a public speech.  (Id. at 73.)  Finally, in a photo of the grassy area along Patterson Avenue, McCandless identified a temporary "no parking" sign which the University posted during the move-in days.  (Id. at 84; see also Def. Ex. 4.)

Michael Dreisbach, Director of Service for the City of Oxford, testified that both the City and the University perform street maintenance on Patterson Avenue.  (Id. at 49.) Dreisbach testified that his Department has monthly meetings with the University's Facilities Department to discuss long-range plans and current construction projects.  (Id.) Dreisbach described the relationship between the University and the City of Oxford as "symbiotic."  (Id. at 56-57.)  Dreisbach was shown Plaintiff's Exhibit 5, which is a map generated by the City of Oxford.  (Id. at 53.)  The map includes a legend which indicates which streets are public, private, and Miami University streets.  (Id. at 52-53.)  Dreisbach acknowledged that the portion of Patterson Avenue where Local 534 intended to locate the rat balloon on August 19 was designated on the map as a public street.  (See id.) However, the Court notes that on the map, that section of Patterson Avenue also falls within the shaded area showing the Miami University campus.  (Pl. Ex. 5.)  After reviewing a number of documents during the hearing, Dreisbach stated that he could not state whether the right-of-way along  Patterson Avenue was owned by the University or the City of Oxford.  (Doc. 6, at 56.)

Local 534 argues that regardless of who "owns" the right-of-way, it is a public forum based on its historic designation and use.  Defendants respond that even though the area near Patterson Avenue may look like a traditional public forum, because it is part of a university's campus, it is treated differently.  Defendants rely on *Gilles v. Garland*, which held that certain open areas at Miami University are limited public fora.  281 Fed.Appx.

7

501, 511 (6th Cir. 2008).

In *Gilles*, the Sixth Circuit quoted from the district court's opinion:

In the case of the University, although it "possesses many of the characteristics of a public forum," such as open sidewalks, "[it] differs in significant respects from public forums such as streets or parks or even municipal theaters." *Widmar v. Vincent*, 454 U.S. 263, 268 n. 5, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). A university's purpose, its traditional use, and the government's intent with respect to the property is quite different because a university's function is not to provide a forum for all persons to talk about all topics at all times. Rather, a university's mission is education and the search for knowledge-to serve as a " 'special type of enclave' devoted to higher education." *ACLU Student Chapter-Univ. of Md., College Park v. Mote*, 321 F.Supp.2d 670, 679 (D.Md. 2004) (quoting [United States v.] Grace, 461 U.S. [171] at 180, 103 S.Ct. 1702 [75 L.Ed.2d 736 (1983) ] ); *see Widmar*, 454 U.S. at 268 n. 5, 102 S.Ct. 269 [70 L.Ed.2d 440] ("We have not held, for example, that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings."). Thus, streets, sidewalks, and other open areas that might otherwise be traditional public fora may be treated differently when they fall within the boundaries of the University's vast campus.

*Id.* at 509 (citing Opinion and order pp. 11-12, JA 114-15.) The district court concluded that Miami University treated its open areas as limited public fora. *Id.* at 510. The Sixth Circuit noted that this conclusion was based on statements made by Lieutenant Andrew Powers, Miami University Police Department, and Robin Parker which indicated that the University "had exercised its prerogative, consistent with its educational mission, to limit expressive activities in campus public areas."

The Sixth Circuit rejected the plaintiff's argument that *Brister v. Faulkner*, 214 F.3d 675 (5th Cir. 2000) was applicable. The Sixth Circuit explained that:

In *Brister*, the Fifth Circuit considered University of Texas property adjacent to and contiguous with a City of Austin public sidewalk, where university policy prohibited all leafleting by non-students. The district court had awarded the plaintiffs declaratory relief, holding that the subject area was a

8

traditional public forum because it was indistinguishable from the city sidewalk.  Noting that public sidewalks are, by long tradition, public fora, the Fifth Circuit affirmed, based on the "very specific facts" of the case, involving "a unique piece of university property that is, for all constitutional purposes, indistinguishable from the Austin city sidewalk."  *Id.* at 683.

*Id.*  The Sixth Circuit explained that the unique facts in *Brister* did not exist in the case before it.  *Id.*  There was no allegation that Miami University's Academic Quad or any other open area "is so contiguous with, and free of visible demarcation from, a city sidewalk or street as to be indistinguishable from it."  *Id.*  Therefore, the Sixth Circuit concluded that it would not "depart from the great weight of authority, which has rejected the notion that open areas on a public university campus are traditional public fora."

This Court concludes that the August 19 location is more like the open areas of Miami University's campus which were addressed in *Gilles* than the sidewalk in *Brister*. The evidence in the record leads this Court to conclude that the right-of-way identified by Local 534 is a part of the Miami University campus.  While certain maps may show the right-of-way, the undisputed testimony presented to the Court was that any such lines were completely ignored by the University and the City of Oxford.  Parker testified that within the right-of-way, the University plants and trims the trees, cuts the grass, and installs computer and electric lines.  McCandless testified that the University Police have the authority to make arrests and issue tickets within the area.  Dreisbach testified that as part of their "symbiotic" relationship, both the City and the University perform maintenance on Patterson Avenue.

Moreover, unlike *Brister*, Patterson Avenue is not adjacent to the City of Oxford. Instead, Patterson Avenue runs through the middle of Miami University's campus, making

it indistinguishable from the University.  Therefore, the facts before this Court do not fall within the narrow ruling in *Brister*, or those cases where the courts were presented with a similar factual scenario.  *See e.g.*, *Venetian Casino Resort v. Local Joint Exec. Board of Las Vegas*, 257 F.3d 937, 943-44 (9th Cir. 2001) (holding that a privately owned sidewalk, which was formally dedicated to the public and connected to other publicly owned sidewalks along the side of a public street, is a public forum).

In addition, the Court notes that the August 19 location is not an area that has historically been used for public speech.  *See Miller*, 622 F.3d at 534 ("The government creates a designated public forum when it opens a piece of public property to the public at large, treating as if it were a traditional public forum.") (citing Parks v. Finan, 385 F.3d 694, 695-696, 699 (6th Cir. 2004) (grounds of state capitol, opened by state government for public expressive activities on a permit system, are either a traditional public forum or designated public forum)).  McCandless testified that the University has never permitted the grassy areas along Patterson Avenue to be a public forum.[3]

Therefore, the Court finds that the August 19 location is a limited public forum.  As such, the University may limit its use to certain groups or dedicate its use solely to the discussion of certain subjects.  *Miller*, 622 F.3d at 535-36 (citing Summum, 129 S.Ct. at 1132).  Any restrictions on speech are constitutional "as long as the restrictions do 'not discriminate against speech on the basis of viewpoint' and are 'reasonable in light of the purpose served by the forum.'"  *Id.* (quoting Good News Club v. Milford Central Sch., 533 U.S. 98, 102-03, 106-07 (2001)).  Local 534 does not challenge Defendant's regulation of

---

[3]However, the Court notes that there was testimony that Local 534 was permitted to picket and handbill in that same area on August 18.

speech in the August 19 location as being content-based or unreasonable.

Based on the foregoing, the Court finds that Local 534 has not shown a strong likelihood of success on the merits, and this factor weighs against the granting of a temporary restraining order.

**2.  Irreparable harm**

Local 534 contends that although Defendants did permit its members to distribute handbills and picket, it believes it suffered irreparable harm because its demonstration was not as effective as it could have been had it been able to inflate the rat.  Defendants respond that Local 534 remains free picket and handbill, and because these alternative channels of communication remain open, there is no irreparable harm.

"It is well settled that when a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."  *Bonnell v. Bonnell* 241 F.3d. 800, 809 (6th Cir. 2001).  However, where there has not been a showing of a likelihood of success on a First Amendment claim, a plaintiff cannot establish irreparable harm.  *See Montgomery v. Carr*, 848 F.Supp. 770, 777 (S.D.Ohio 1993) (plaintiffs have not shown irreparable harm where they have not established a substantial likelihood of success of proving their First Amendment claim); *Wappler v. Kleinsmith*, 2009 WL 483223, *3 (W.D.Mich. Feb. 24, 2009) ("Absent a showing of substantial likelihood of success on the merits of his First Amendment claim, Plaintiff fails to show irreparable injury."); *see also Gonzalez v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.").

11

Based on the foregoing, the Court finds that Local 534 has not shown irreparable harm, and therefore this factor weighs against the granting of a temporary restraining order.

### 3. Substantial harm to others

Defendants argue that the placement of the rat balloon in the August 19 location would cause substantial harm to others because it would increase the risk of injury to students, faculty and staff.  Defendants point to Parker's testimony that the rope used to secure the rat balloon would damage tree branches.  (Doc. 6, at 96.)  Defendants also rely on McCandless' testimony that the rat balloon would create a safety hazard for cars who could not see students who "cross [streets] where they feel like it" and are often distracted by cell phones.  (Id. at 70-71, 80.)  The Court notes that there is little evidence in the record to the contrary.  Therefore, the Court finds that this factor weighs against the granting of a temporary restraining order.

### 4. Public interest

"The determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment claim because it is always in the public interest to prevent the violation of a party's constitutional rights."  *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  However, because that Local 534 has not shown a likelihood of success on the merits of its claim, this factor weighs against the granting of a temporary restraining order.

**III.**     **CONCLUSION**

Therefore, Plaintiff's Motion for Temporary Restraining Order (Doc. 2) is **DENIED**.

**IT IS SO ORDERED.**

                                                            */s/ Michael R. Barrett*
_____     Michael R. Barrett
                                                            United States District Judge